# Illinois Official Reports
## Appellate Court

---

### *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*,
### 2014 IL App (2d) 130781

---

| | |
|---|---|
| Appellate Court Caption | WILDER CHIROPRACTIC, INC., Plaintiff-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee (Easy PC Solutions, Defendant). |
| District & No. | Second District<br>Docket No. 2-13-0781 |
| Filed | June 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an underlying suit for damages arising from defendant's unsolicited fax transmissions to the class represented by plaintiff in violation of the Telephone Consumer Protection Act, the dismissal, on *forum non conveniens* grounds and pursuant to section 2-619(a)(3) of the Code of Civil Procedure, of defendant's insurer from plaintiff's action seeking a declaratory judgment that the insurance policy defendant insurer issued to its insured covered the claims that were made and settled in plaintiff's underlying action was an abuse of discretion with respect to *forum non conveniens* because no reasonable person could conclude that the relevant factors weighed against plaintiff's forum choice, and as to section 2-619(a)(3), the pending action in Wisconsin brought by defendant insurer between the same parties for the same cause had been dismissed and section 2-619(a)(3) no longer provided a basis for dismissal; however, Supreme Court Rule 103(b), which provides for dismissal based on a lack of diligence in serving process on defendant, did provide an adequate basis to sustain the dismissal based on the unreasonable four-month delay in serving defendant insurer, and since the parties agreed that the statute of limitations had not expired when defendant insurer was served, the dismissal would be without prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-MR-623; the Hon. Jorge L. Ortiz, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Brian J. Wanca, David M. Oppenheim, and Jeffrey A. Berman, all of Anderson & Wanca, of Rolling Meadows, and Phillip A. Bock and Robert M. Hatch, both of Bock & Hatch, LLC, of Chicago, for appellant. |
| | Michael C. Borders and Rosa M. Tumialan, both of Dykema Gossett PLLC, of Chicago, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices Hutchinson and Spence concurred in the judgment and opinion. |

**OPINION**

Plaintiff, Wilder Chiropractic, Inc., appeals the dismissal of defendant State Farm Fire and Casualty Company (State Farm) from plaintiff's declaratory judgment action on an insurance policy issued by State Farm. The trial court dismissed the action against State Farm on two bases: (1) the common-law doctrine of *forum non conveniens*; and (2) section 2-619(a)(3) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(3) (West 2012)), which authorizes dismissal of an action where "there is another action pending between the same parties for the same cause" (735 ILCS 5/2-619(a)(3) (West 2012)). For the following reasons, we hold that *forum non conveniens* was not a proper basis for dismissal and that events subsequent to the dismissal have mooted the section 2-619(a)(3) issue. We affirm the dismissal on an alternative ground proposed by State Farm, namely, that plaintiff did not exercise reasonable diligence, as required by Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), in serving State Farm in this action. Accordingly, we affirm the dismissal, but clarify that it is without prejudice to plaintiff refiling the action against State Farm.

## I. BACKGROUND

The current suit is an insurance coverage action. The underlying suit was a class action filed on September 27, 2011, in Waukesha County, Wisconsin. The named defendant was Easy PC Solutions (Easy PC), a Wisconsin limited liability company with its principal place of business in Waukesha County. Plaintiff, whose principal place of business is in Dane County, Wisconsin, was the named representative of a class whose members allegedly received unsolicited facsimile transmissions from Easy PC. Plaintiff's complaint did not identify the locations of the class members other than itself. Plaintiff alleged both

common-law conversion and violation of the federal Telephone Consumer Protection Act (the TCPA) (47 U.S.C. § 227 (2006)).

¶ 4    Easy PC tendered defense of the action to State Farm. Easy PC claimed coverage under a State Farm business policy (the Policy) issued to "WRT Specialties, Inc." (WRT) in Waukesha County. The address listed for WRT in the Policy was the same address listed for Easy PC in the class action complaint. (The relationship between WRT and Easy PC is unclear from the record.) The Policy was purchased by WRT through Brandi Wein, a State Farm agent in Pewaukee, Wisconsin.

¶ 5    In December 2011, State Farm sent David Reise and Darryl Wessel, both of WRT, a letter rejecting the tender of defense. The letter was signed by "Steve Davis, Team Member," who referenced WRT's prior discussions with Deanna Clarey, a State Farm claims representative. Davis explained in the letter that there was no coverage under the Policy, because the deliberate sending of faxes fell within a coverage exclusion for intentional acts.

¶ 6    On April 12, 2012, plaintiff, on behalf of the putative class, entered into a settlement agreement (the Agreement) with Easy PC. Plaintiff and Easy PC stipulated to certification of a class that "include[d] approximately 5,500 doctors['] and chiropractors['] offices in Wisconsin and Illinois to which [Easy PC] caused to be sent 17,319 [fax] advertisements without prior express permission or invitation." The Agreement recited that the 17,319 unsolicited faxes were sent on September 28, October 7, and October 16, 2010. The Agreement noted that the total potential liability under the TCPA for the 17,319 faxes would be $24,750,000, at $1,500 per fax. The actual settlement amount, however, was $8,874,178.77.

¶ 7    Pursuant to the Agreement, Easy PC agreed to assign its rights under the Policy to the putative class. Furthermore, plaintiff agreed to seek recovery of the settlement amount only from proceeds of the Policy, and only as against State Farm.

¶ 8    There are allusions in the briefs and the record to a May 2012 order of the Wisconsin trial court preliminarily approving the Agreement. There is, however, no such order in the record.

¶ 9    On July 10, 2012, the Wisconsin trial court entered judgment on the Agreement and certified a class described only as follows: "[A]ll persons to whom [Easy PC] sent advertising facsimiles between September 15, 2010[,] and October 30, 2010." The judgment did not indicate that the certified class was composed differently than as described in the Agreement, *i.e.*, with members in Wisconsin and Illinois alone.

¶ 10   In the proceedings below in this declaratory judgment action, plaintiff represented to the trial court that the class has 7,076 members, of which 4,196, or approximately 60%, are in Illinois. State Farm neither questioned those figures below nor does so in this appeal.

¶ 11   The present action was initiated when, on April 20, 2012, plaintiff brought against State Farm and Easy PC a complaint for a declaratory judgment that the Policy covered the claims that were settled by the Agreement. (Easy PC is not a party to this appeal.) The record contains an alias summons served on State Farm at its Bloomington, Illinois, office on August 16, 2012. The parties agree that State Farm was not served prior to August 16, 2012. State Farm's principal place of business is in Bloomington.

¶ 12   Meanwhile, on August 8, 2012, State Farm filed its own declaratory judgment action on the Policy, in the United States District Court for the Eastern District of Wisconsin in Milwaukee. State Farm named plaintiff, Easy PC, and WRT. On September 25, 2012,

plaintiff moved to dismiss the federal action for lack of subject matter jurisdiction and on grounds of abstention.

¶ 13    Several days later, on October 10, 2012, State Farm filed a motion to dismiss the Illinois declaratory judgment action. State Farm filed an amended motion on November 9, 2012, wherein it presented four grounds for dismissal. First, State Farm cited the doctrine of *forum non conveniens*. State Farm characterized the Illinois action as a "Wisconsin[-]based coverage dispute," because the Policy was issued to a Wisconsin insured, WRT, through a State Farm agent in Wisconsin, and would require application of Wisconsin law. State Farm further contended that "[t]he threshold issue of whether Easy PC is an insured under a policy issued to [WRT] will require access to documents and testimony from witnesses located in Wisconsin." "This fact," according to State Farm, "introduces practical difficulties which will hamper the ability of a [*sic*] this Illinois court to conduct an efficient trial." State Farm attached an affidavit from Clarey, who was based in State Farm's Brookfield, Wisconsin, office. Clarey averred that she had reviewed the file of WRT's claim on the Policy and had "personal knowledge [that] one of the coverage issues identified is that Easy PC is not a named insured, additional insured or insured by definition under [the Policy]–the policy under which coverage is sought for [plaintiff's class action]." Clarey further stated that, "[t]o the best of [her] knowledge, the documents and witnesses that confirm that Easy PC is not an insured under [the Policy] are located in Wisconsin."

¶ 14    Clarey proceeded to identify two other individuals with potentially relevant knowledge. First, Clarey identified Wessel as "a principal of both WRT and Easy PC," and also a resident of Waukesha County. Wessel had "knowledge of [the Policy] and any renewals thereof." Second, Clarey identified Wein as the Pewaukee State Farm agent who sold WRT the Policy. Wein had "knowledge of the purchase of [the Policy] and renewals thereof."

¶ 15    Also important to a *forum non conveniens* analysis, according to State Farm, was that Illinois likely lacked personal jurisdiction over Easy PC and WRT (the latter was a necessary party, State Farm said, though it was not named in the Illinois action).

¶ 16    Concluding its *forum non conveniens* analysis, State Farm asserted that "[t]he overriding interest in effecting sensible and efficient judicial administration" should compel the trial court to dismiss plaintiff's complaint, which was "premised on a Wisconsin[-]based dispute that can and will be completely resolved by a Wisconsin federal court."

¶ 17    The second basis that State Farm suggested for dismissal was section 2-619(a)(3) of the Code, which, in State Farm's view, required deference to the ongoing federal action in Wisconsin.

¶ 18    Third, State Farm contended that dismissal was required under section 2-405 of the Code (735 ILCS 5/2-405 (West 2012)) because plaintiff failed to join a necessary party, WRT, the sole named insured under the Policy. Finally, State Farm claimed that plaintiff's failure to timely serve State Farm in the Illinois action required dismissal under Illinois Supreme Court Rule 103(b) (eff. July 1, 2007).

¶ 19    Responding to the motion to dismiss, plaintiff noted that its own motion to dismiss in the federal action was still pending. Plaintiff asserted that deference to the federal action was unnecessary and inappropriate because, as argued in its motion, the federal court lacked subject matter jurisdiction over the cause.

¶ 20    The trial court granted State Farm's motion to dismiss, expressly relying on two of the grounds proposed by State Farm. The first was the doctrine of *forum non conveniens*. The court, balancing the private- and public-interest factors involved in an analysis under that doctrine (see generally *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812), said:

> "[Plaintiff] is a Wisconsin corporation and Easy PC is a Wisconsin limited liability company. The alleged fax advertisement transmissions giving rise to the underlying action were transmitted in Wisconsin. The insurance policy in question was issued in Wisconsin.

> * * *

> The plaintiff's choice of forum is entitled to less deference than is customary in this case because it is a nonresident and the action giving rise to the litigation did not occur in this forum.

> The Court has considered the private and public interest factors and agrees with State Farm that the private factors weigh strongly in favor of dismissal on *forum non conveniens* grounds.

> The question of whether Easy PC is an insured under the policy in question, one issued to [WRT], will indeed require access to documents and witnesses located in Wisconsin. While access to documents is not as important, the factor of this day and age are [*sic*] the electronic storage and transmission of documents and records, it is still nonetheless a factor entitled to–to consideration.

> The Court also notes that [WRT] may not be subject to personal jurisdiction in Illinois. This is a practical consideration the Court must take into account in deciding this action. The Court also notes that this is–that [the Policy] is a Wisconsin policy issued in Wisconsin pursuant to Wisconsin law.

> The Court also finds the public interest factors weigh strongly in favor of dismissal. This case is really a Wisconsin-based dispute concerning [a] Wisconsin-issued business policy with very little, if any, connection to Illinois. As also stated previously, Illinois may not have personal jurisdiction over [WRT]. In addition, Wisconsin law will govern interpretation of the insurance policy at issue. While this Court is certainly capable of interpreting and applying the law of a foreign jurisdiction, and while this factor may be accorded less weight, it is again still entitled to some weight and consideration. Here obviously there's no jury demand[;] however, Wisconsin has a greater interest in resolving this case than does Illinois since again this–this is a Wisconsin-based dispute. The issue of burdening Lake County or a Lake County jury is obviously nonexistent and this forum cannot be said to be congested.

> The Court having weighed and considered the private and public interest factors in the totality of the circumstances[,] and [*sic*] in its discretion therefore grants State Farm's motion to dismiss on *forum non conveniens* grounds."

¶ 21    The court also agreed that dismissal was warranted under section 2-619(a)(3) of the Code, because "the same cause of action involving the same parties is pending in the Wisconsin Federal Court." The court elaborated:

> "The Court notes that [WRT] is a party in the Wisconsin Federal Court action, a necessary party, over which this Court may lack personal jurisdiction, and complete relief may be afforded in the other forum, and here the Court would alternatively

grant the [section] 2-619(a)(3) motion as well[,] finding that this would prevent duplicative litigation. Comity would be properly accorded here. The Wisconsin Federal Court has proper subject matter jurisdiction despite Easy PC's position to the contrary, as well as personal jurisdiction of all the parties, again, especially [WRT], who is the named insured, whose rights obviously are important."

¶ 22 The trial court found it unnecessary, in light of the independent grounds it accepted for dismissal, to address the Rule 103(b) issue. Also, while the trial court did not expressly address the standards of section 2-405 of the Code, the court did refer to WRT as a "necessary party." Moreover, the court's concern that WRT would not be subject to personal jurisdiction in Illinois evidently implied a belief that WRT's presence was necessary to the Illinois action.

¶ 23 The trial court issued a written order consistent with its oral declarations. The court dismissed the action on grounds of *forum non conveniens*, cited section 2-619(a)(3) as an "alternative ground," and declined to address the Rule 103(b) issue. The court did not mention the section 2-405 issue.

¶ 24 Plaintiff filed a motion to reconsider, suggesting that, because its motion to dismiss was still pending before the federal court, the better remedy was to stay the present action until that motion was decided. The court disagreed and denied the motion to reconsider.

¶ 25 On July 29, 2013, plaintiff filed its notice of appeal. Plaintiff asks that we take judicial notice of the fact that, on September 27, 2013, the district court dismissed the federal action for lack of diversity jurisdiction. See *State Farm Fire & Casualty Co. v. Easy PC Solutions LLC*, No. 12-C-0807, 2013 WL 5433994 (E.D. Wis. Sept. 27, 2013). We take notice of the dismissal, as is proper for us. See *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 (a court may take judicial notice of a decision of another court).

¶ 26 II. ANALYSIS

¶ 27 Plaintiff challenges the two grounds on which the trial court relied in dismissing the declaratory judgment action. State Farm defends the adequacy of those grounds and alternatively asks us to affirm the dismissal on the basis of Rule 103(b), though that issue was not decided by the trial court.

¶ 28 A. *Forum Non Conveniens*

¶ 29 We begin with the *forum non conveniens* issue. We draw the following principles from *Fennell*, 2012 IL 113812, the supreme court's most recent statement on the doctrine. The doctrine "allows a court to decline jurisdiction of a case, even though it may have proper jurisdiction over the subject matter and the parties, if it appears that another forum can better serve the convenience of the parties and the ends of justice." *Id.* ¶ 12. The doctrine " 'is founded in considerations of fundamental fairness and sensible and effective judicial administration.' " *Id.* ¶ 14 (quoting *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005)). The doctrine has interstate and intrastate application (*id.* ¶ 13), but in this case only the interstate aspect is in play.

¶ 30 In applying the doctrine, Illinois courts follow the framework of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), which requires the court to weigh various interests, grouped

into "private interest factors affecting the litigants" and "public interest factors affecting court administration" (*Fennell*, 2012 IL 113812, ¶¶ 14-15).

¶ 31 The private-interest factors include:

"the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive." *Id.* ¶ 15.

¶ 32 The public-interest factors include:

"the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin; the unfairness of imposing jury duty upon residents of a community with no connection to the litigation; and the interest in having local controversies decided locally." *Id.* ¶ 16.

¶ 33 The factors are to be applied as follows:

"In determining whether the doctrine of *forum non conveniens* applies, the circuit court must balance the public and private interest factors. [Citations.] The court does not weigh the private interest factors against the public interest factors. Rather, the court must evaluate the total circumstances of the case in determining whether the balance of factors strongly favors dismissal. [Citation.] If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." (Emphasis and internal quotation marks omitted.) *Id.* ¶ 17.

¶ 34 The *Fennell* court set forth the procedures governing trial and appellate consideration of *forum non conveniens* motions:

"The defendant bears the burden of showing that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties. The defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. [Citation.]

Although these controlling legal principles are generally recognized, each *forum non conveniens* case is unique and must be considered on its own facts. [Citations.] The determination of a *forum non conveniens* motion lies within the sound discretion of the circuit court. On review, the circuit court's determination will be reversed only if it can be shown that the court abused its discretion in balancing the relevant factors. [Citations.] An abuse of discretion will be found where no reasonable person would take the view adopted by the circuit court. [Citations.]" *Id.* ¶¶ 20-21.

¶ 35 The *Fennell* court also described the measure of deference that courts are required to accord a plaintiff's choice of forum:

"A further consideration is deference to a plaintiff's choice of forum. A plaintiff's right to select the forum is substantial. Unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed. However, the plaintiff's choice is not entitled to the same weight or consideration in all cases. [Citations.] When a plaintiff chooses [its] home forum or the site of the accident or injury, it is reasonable to assume that the choice of forum is convenient.

- 7 -

However, when the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference. [Citation.]" *Id.* ¶ 18.

¶ 36 These last comments echoed remarks the court made less than 10 years earlier in *Langenhorst v. Norfolk Southern R.R. Co.*, 219 Ill. 2d 430, 442-43 (2006), where the court collected its past statements emphasizing the deference owed the plaintiff's forum choice and reaffirmed the need for such deference:

"This court has repeatedly noted that the *forum non conveniens* doctrine gives courts discretionary power that should be exercised only in exceptional circumstances when the interests of justice require a trial in a more convenient forum. [Citations.] See also [*Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176 (2003)] (' " [t]he test *** is whether the relevant factors, viewed in their totality, *strongly* favor transfer to the forum suggested by defendant" ' (emphasis added)), quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990). The plaintiff has a substantial interest in choosing the forum where his rights will be vindicated, and the plaintiff's forum choice should rarely be disturbed unless the other factors strongly favor transfer. [Citations]; Restatement (Second) of Conflict of Laws § 84, Comment *c* (1971) ('since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons'). However, the plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum. [Citation.]

In most instances, the plaintiff's initial choice of forum will prevail, provided venue is proper and the inconvenience factors attached to such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum. *** [Citation.] Although this is a difficult standard for defendants to meet, it does not foreclose legitimate transfers when the balance of factors strongly favors litigation in another forum. *** [Citation.]" (Emphases and internal quotation marks omitted.)

"This deference to plaintiff's choice of forum is commonly referred to as an unequal balancing test." *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 366 (1983).

¶ 37 Finally, the *Fennell* court noted the doctrine's aim of preventing forum shopping:

"[C]ourts have never favored forum shopping. [Citation.] Decent judicial administration cannot tolerate forum shopping as a persuasive or even legitimate reason for burdening communities with litigation that arose elsewhere and should, in all justice, be tried there. [Citation.] Indeed, [a] concern animating our *forum non conveniens* jurisprudence is curtailing forum shopping by plaintiffs." (Internal quotation marks omitted.) *Fennell*, 2012 IL 113812, ¶ 19.

¶ 38 Before moving to a balancing of the factors, we note a serious threshold issue. The forum that State Farm identified below as being more convenient than Lake County was the United States District Court for the Eastern District of Wisconsin, where State Farm's own declaratory judgment action was then pending. As have we noted, while this appeal was pending the district court dismissed the federal action for lack of subject matter jurisdiction. *Supra* ¶ 26.

¶ 39    This is of grave concern here because a *forum non conveniens* analysis looks to whether "another forum can better serve the convenience of the parties and the ends of justice." *Fennell*, 2012 IL 113812, ¶ 12. The inquiry depends on the existence of an alternate *available* forum. We acknowledge that the supreme court said in *Fender v. St. Louis Southwestern Ry. Co.*, 49 Ill. 2d 1, 5 (1971), that "[t]he availability of an appropriate forum is *a factor* to be considered in ruling upon a motion to dismiss *forum non conveniens*." (Emphasis added.) The notion, however, that the availability of another forum is but *a factor* in *forum non conveniens* analyses has not taken root in supreme or appellate court decisions. Rather, the availability of another forum has come to be recognized as an indispensable precondition of a *forum non conveniens* analysis. This understanding has its genesis in remarks in *Lonergan v. Crucible Steel Co. of America*, 37 Ill. 2d 599 (1967), a decision that preceded *Fender* by four years. In *Lonergan*, the supreme court said: "Implicit in the doctrine of *forum non conveniens* is the fact there are two or more forums that can exercise jurisdiction but one which is better or best able to serve the convenience of the parties and the ends of justice." *Id.* at 606. This proposition is now consistently reiterated whenever the doctrine of *forum non conveniens* is set forth. See, *e.g.*, *Fennell*, 2012 IL 113812, ¶ 12 ("The doctrine of *forum non conveniens* assumes that there is more than one forum with the power to hear the case."). The availability of another forum "is a threshold requirement and of first consideration in determining the propriety of declining jurisdiction under the doctrine in a particular case." *McDonald's Corp. v. Smargon*, 31 Ill. App. 3d 493, 496 (1975). We note that an "available" forum still means what *Fender* said, namely a forum with "the capacity *** to obtain jurisdiction and grant relief." *Fender*, 49 Ill. 2d at 5.

¶ 40    *Lonergan* and *Smargon* illustrate that the availability of another forum is the threshold for a *forum non conveniens* analysis.

¶ 41    In *Lonergan*, the plaintiffs brought a shareholder's suit in Cook County against multiple corporations, directors, and officers. The trial court denied the corporate defendants' motion for dismissal based on *forum non conveniens*. Affirming the denial, the supreme court noted that the corporate defendants failed to propose any alternate forum for the action. This omission severely compromised their *forum non conveniens* contention. For instance, the corporate defendants argued, *inter alia*, that the Illinois forum was inadequate because it could not grant the full relief the plaintiffs requested. The corporate defendants explained that certain of the named individual defendants, who were non-Illinois residents and who (according to the corporate defendants) were necessary to a determination of damages, were not yet served. *Lonergan*, 37 Ill. 2d at 606-07.

¶ 42    The supreme court rejected this line of argument because it did not prove the superiority of any other forum:

        "Whether plaintiffs will be able to obtain jurisdiction over these non-resident individual defendants, or whether it is necessary at all, is not before us at this time. It is apparent nevertheless that these individual defendants reside in numerous states, such as Pennsylvania, West Virginia, Massachusetts, New York, Georgia, and California, and there is nothing to indicate that service of process could be obtained on all of them from any other State. In short, defendants have failed to show that any State could grant more relief than could be granted in Illinois." *Id.* at 607.

¶ 43    In *Smargon*, the trial court dismissed the plaintiffs' action on principles of *forum non conveniens*, finding that Kentucky would be the more appropriate forum.

Challenging the dismissal, the plaintiffs argued that one of the defendants, an Illinois resident, was a necessary party to the dispute but "was not a resident of Kentucky, would not voluntarily submit to [Kentucky] jurisdiction, and was not subject to its jurisdiction under the Kentucky long-arm statute." *Smargon*, 31 Ill. App. 3d at 496. The court, though acknowledging that the availability of the Kentucky forum was critical to the forum analysis, determined that the witness was not a necessary party under either Illinois or Kentucky law. Therefore, the court affirmed the dismissal. *Id.* at 496-97.

¶ 44    In 1986, subsequent to *Lonergan* and *Smargon*, the supreme court adopted Rule 187, subsection (c) of which now provides:

> "Dismissal of an action under the doctrine of *forum non conveniens* shall be upon the following conditions:
>
>> (i) if the plaintiff elects to file the action in another forum within six months of the dismissal order, the defendant shall accept service of process from that court; and
>>
>> (ii) if the statute of limitations has run in the other forum, the defendant shall waive that defense." Ill. S. Ct. R. 187(c)(2)(i), (ii) (eff. Jan. 4, 2013).

¶ 45    Rule 187(c) eliminates the need for a court to determine whether service upon the defendant would be possible in the alternate forum, for dismissal on grounds of *forum non conveniens* will be contingent upon the defendant waiving any objection to service. Rule 187(c) does not, however, eliminate all potential jurisdictional concerns with the alternate forum. For instance, Rule 187(c) has no provision for a defendant's waiver of subject matter jurisdiction where the alternate forum is a federal court. We can imagine no use for such a provision, for a federal court has an independent duty to verify that it has subject matter jurisdiction (*In re Repository Technologies, Inc.*, 601 F.3d 710, 719 (7th Cir. 2010)), which cannot be conferred by agreement of the parties (*Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980)). In the filings below on the *forum non conveniens* issue, which were filed while plaintiff's motion to dismiss the federal action was pending, the parties debated whether the federal court had subject matter jurisdiction. Subsequent to the notice of appeal in this case, the district court dismissed the federal action because the matter did not meet the amount-in-controversy requirement of diversity jurisdiction. See *State Farm Fire & Casualty Co.*, 2013 WL 5433994, at *4-5. The aim of a *forum non conveniens* analysis is to identify a more convenient and *available* forum. The only alternate forum that State Farm identified in its motion to dismiss is a forum that has since dismissed a case seeking the same relief as was sought here, namely, a declaration of coverage under the Policy. In its appellee's brief, State Farm makes no attempt to convince us that a suit by plaintiff in that court would not meet the same end. Rather, State Farm takes a fallback position: "In the event State Farm's pending motion to revive the Wisconsin federal action are [*sic*] unsuccessful, without question the coverage dispute can still be brought before *a Wisconsin state court* ***.*" However, neither in the motion to dismiss nor in its argument thereon did State Farm propose a Wisconsin *state* court as an alternate forum. As we explain below (*infra* ¶ 60), even if we were inclined to entertain this lately suggested option, State Farm would not prevail, because it fails to identify *which* state forum in Wisconsin would be available. This is a fatal omission, since distances are critical in judging convenience, particularly between contiguous states.

- 10 -

¶ 46    Even if we assumed the availability of the federal court in Milwaukee, we would find that the trial court abused its discretion in dismissing this case for *forum non conveniens*.

¶ 47    Before, however, we proceed to the trial court's weighing of the relevant factors, we address plaintiff's assertion that the trial court abused its discretion by failing to exercise it fully, as the court did not expressly apply each of the private- and public-interest factors to be considered in a *forum non conveniens* analysis. We see three private-interest factors that the court did not expressly consider. Plaintiff claims that, under *Fennell*, a trial court's "failure to fully analyze and balance each of the pertinent factors is, in and of itself, an abuse of discretion that requires reversal." We disagree, judging by the supreme court's actual course of action in *Fennell* upon recognizing the trial court's failure "to recognize several private and public interest factors in its analysis" (*Fennell*, 2012 IL 113812, ¶ 24). The supreme court "remind[ed] [the] trial courts to include all of the relevant private and public interest factors in their analyses." (Emphasis omitted.) *Id.* The court did not, however, reverse the trial court for its incomplete analysis, but proceeded to examine each factor, including those the trial court did not consider, and ultimately reversed the trial court on the substance of the issue. *Id.* ¶¶ 25-49. We are not alone among appellate panels in finding an insufficiently clear mandate in *Fennell* for reversing the trial court for omitting factors from its *forum non conveniens* analysis. See *Pendergast v. Meade Electric Co.*, 2013 IL App (1st) 121317, ¶¶ 24, 26 ("[T]he supreme court [in *Fennell*] did not hold that omitting factors from the analysis necessarily results in reversal. Rather, in that case, after admonishing the circuit court, it reviewed the circuit court's analysis of the factors that were addressed in the order and reversed the court on the merits. *** Although it would be beneficial to remand the matter to the circuit court with instructions to provide its analysis of the public and private interest factors, we lack a clear directive from the supreme court to do so.").

¶ 48    We turn at last to the trial court's analysis of the factors. We note that the trial court erred at the outset by according plaintiff's choice of forum reduced deference. The court reasoned that plaintiff "is a nonresident and the action giving rise to the litigation did not occur in this forum." Plaintiff indeed is a nonresident, but we disagree with the remainder of the court's statement. Diminished deference to a plaintiff's forum choice is appropriate only where "the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum" (*Fennell*, 2012 IL 113812, ¶ 18).

¶ 49    The trial court apparently believed that it could consider only plaintiff's residency (Wisconsin), not the residency of any other class member. It is unclear what "action giving rise to the litigation" the court believed it could consider. We hold that, for a *forum non conveniens* analysis in an insurance coverage action, "action giving rise to the litigation" includes not just the issuance of a policy, but also the actions or events that were the subject of an underlying action and that form the basis for the claim of coverage.

¶ 50    We are guided here by *Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155, also an insurance coverage action. The underlying class action in *Landmark* was brought by Lawrence Brodsky, an Illinois resident, against NIP Group, Inc., a New Jersey company, for sending junk faxes that Brodsky and other class members received. Brodsky received the faxes in Illinois. *Id.* ¶ 4. Subsequently, NIP's insurer, Landmark American Insurance Company, sued NIP and Brodsky, seeking a declaratory judgment that it had no duty to defend NIP in the underlying action. *Id.* ¶ 5. The trial court denied NIP's *forum non conveniens* motion. In affirming the denial, the appellate court noted, *inter alia*,

that the complaint alleged "acts occurring in Illinois," namely, the receipt of faxes sent there by NIP. *Id.* ¶ 55.

¶ 51    Likewise here, plaintiff's class action complaint in the underlying Wisconsin action alleged that faxes sent by Easy PC were received by class members in Illinois. Plaintiff, the named representative, received his faxes in Wisconsin, but since the class here was certified, we may consider, for purposes of a *forum non conveniens* analysis, the forum in which other class members were injured. *Cf. Gridley*, 217 Ill. 2d at 165 (criticizing the appellate court, in a case where the class was not certified, for expanding its *forum non conveniens* analysis to consider, not just facts about the named class representative, but also identity, number, and location of potential class members); *Estate of Rath v. Abbott Laboratories, Inc.*, 2012 IL App (5th) 100096, ¶ 44 (Spomer, J., specially concurring) ("It is important to note that in a class action wherein the class has not been certified, the *forum non conveniens* analysis must focus on the cause of action of the named plaintiff only, rather than the cause of action of a nationwide class of individuals similarly situated."). Therefore, since Illinois is "the site of the action or injury," we "assume that the choice of forum is convenient" (*Fennell*, 2012 IL 113812, ¶ 18). (We do not consider whether any events or injuries occurred in Lake County specifically, for State Farm's motion to dismiss did not identify an alternate forum within Illinois, but simply pointed to Wisconsin as the more convenient forum.) Therefore, contrary to the trial court's view, plaintiff's choice of Lake County as a forum was entitled to the fullest measure of deference available under the principles of *forum non conveniens*.

¶ 52    Consequently, in applying the substantive law, we consider not only the considerable deference that we, as the reviewing court, owe the trial court's decision on State Farm's *forum non conveniens* motion, but also the considerable deference that the trial court owed the plaintiff's forum choice as an initial matter. Our overarching question on review is whether any reasonable person would agree with the trial court that this case presents those "exceptional circumstances" where the relevant factors "strongly favor" a forum transfer. (Emphasis and internal quotation marks omitted.) *Langenhorst*, 219 Ill. 2d at 442. We are mindful, too, that the defendant's "high burden" to prevail over the plaintiff's forum choice (*id.* at 453) remains with the defendant and never switches to the plaintiff (*Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 275 (2011)). In evaluating whether State Farm met its burden, our continual focus is on what it argued and adduced below.

¶ 53    The first private-interest factor we consider is the convenience of the parties. This is one of the factors that the trial court failed to expressly apply in its analysis. We consider the inconvenience only to State Farm, since it cannot argue plaintiff's inconvenience. See *Fennell*, 2012 IL 113812, ¶ 25. It is, we note, presumably convenient for a corporate defendant to litigate in the state in which it has its principal place of business. See *Erwin*, 408 Ill. App. 3d at 275-76; *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 658 (2009). State Farm does not contend that it, as a party, would be inconvenienced by litigating here in Illinois. While the headquartering of State Farm in Illinois is not dispositive of the *forum non conveniens* issue, it is nonetheless a factor we consider. See *Gridley*, 217 Ill. 2d at 173.

¶ 54    Next, we consider the following three interrelated private-interest factors: (1) "the relative ease of access to sources of testimonial, documentary, and real evidence"; (2) "the availability of compulsory process to secure attendance of unwilling witnesses"; and (3) "the

cost to obtain attendance of willing witnesses." *Fennell*, 2012 IL 113812, ¶ 15. The trial court considered the first but not the second or third.

¶ 55    In its motion to dismiss, State Farm asserted that "[t]he threshold issue of whether Easy PC is an insured under the policy issued to [WRT] will require access to documents and testimony from witnesses located in Wisconsin." As support, State Farm attached the affidavit of Clarey, who identified herself, Wessel, and Wein as potential witnesses with knowledge pertinent to the issue of whether Easy PC is an insured under the Policy.

¶ 56    We discuss first the location of the documents. With advances in technology that facilitate transmission of original documents or copies, the location of documentary material has had increasingly diminished impact in *forum non conveniens* analyses. In *Fennell*, the supreme court compared two forums: St. Clair County, Illinois, the plaintiff's chosen forum, and Copiah County, Mississippi, the defendant's preferred forum. The supreme court assumed for purposes of its analysis that, as the plaintiff alleged, "voluminous" documentary evidence pertinent to the case was stored in St. Clair County. *Id.* ¶ 35. The court remarked that "the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of Internet, email, telefax, copying machines, and world-wide delivery services, since those items can now be easily copied and sent." *Id.* ¶ 36 (citing *Erwin*, 408 Ill. App. 3d at 281 (collecting cases)). The court held that the potential need to retrieve documents from Illinois "d[id] not outweigh the substantial inconvenience of requiring distant witnesses to travel to Illinois." *Id.*

¶ 57    If the distance between Copiah County, Mississippi, and St. Clair County, Illinois, is considered insubstantial for the transmission of documents, so much less should the distance between southern Wisconsin and northern Illinois. Consequently, the Wisconsin situs of documents figures minimally in our analysis here.

¶ 58    The locations of witnesses can, on the other hand, pose true logistical difficulties. As a preliminary matter, the parties do not dispute–and other courts applying *forum non conveniens* principles have recognized–that Illinois courts have no means for compelling a nonresident witness to testify in a civil trial in this state. See, *e.g.*, *Gridley*, 217 Ill. 2d at 174 ("Illinois courts do not have subpoena power in Louisiana ***."); *Crowell v. Golz*, 319 Ill. App. 3d 184, 190 (2001) ("We acknowledge that St. Clair County would not be able to compel these Missouri witnesses to testify ***."). This reality is not significant here, for the attendance of the named witnesses can be secured by other means. Wessel is a principal of Easy PC. Clarey is a State Farm claims representative and Wein a State Farm insurance agent. Therefore, the parties can themselves secure the attendance of these witnesses. See *Gridley*, 217 Ill. 2d at 174 (unavailability of compulsory process is nugatory where the witnesses are under the control of one of the parties).

¶ 59    We consider also, of course, the potential cost and burden of witness attendance. Distances matter; *forum non conveniens* analyses regularly compare mileages between witness locations and the forums in question. Where, as here, the proposed alternate forum is in a contiguous state, mileage differences might well have less significance. State Farm's proposed alternate forum was the federal district court in Milwaukee. State Farm, however, provided no mileage information by which to compare Milwaukee with Waukegan. We take judicial notice of the fact that, for the three witnesses identified, whose locations are all west of Milwaukee, the Lake County courthouse would be approximately 55 miles farther than the Milwaukee federal courthouse. "[T]here is no bright-line rule of inconvenient distances ***."

*Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 126. Even the 45-mile *greater* distance between the Milwaukee County and Cook County courthouses has been deemed by an appellate panel not to be "unreasonable or inconvenient" in itself (*id.* ¶ 125). Moreover, since no single factor is controlling in a *forum non conveniens* analysis (*Fennell*, 2012 IL 113812, ¶ 17), even considerable distances for witnesses to travel might not, by themselves, be cause to upset the plaintiff's choice of the more distant forum.

¶ 60    Here we note why State Farm would not prevail even if we considered its suggestion, made for the first time on appeal, that a Wisconsin state court is a viable alternative. State Farm has identified no particular state court in Wisconsin. Some counties in Wisconsin are, obviously, much farther than Waukegan from the witnesses identified here. Moreover, even if we were willing to assume that State Farm, to serve the convenience of the witnesses, would contemplate a state court in southeastern Wisconsin, we would still not be convinced that the greater distance to Lake County would, of itself, justify upsetting plaintiff's forum choice.

¶ 61    The next private-interest factor is "the possibility of viewing the premises, if appropriate" (*Fennell*, 2012 IL 113812, ¶ 15). The parties agree that this factor is not germane here.

¶ 62    The final private-interest factor encompasses "all other practical considerations that make a trial easy, expeditious, and inexpensive" (*id.*). Here we address plaintiff's challenge to the trial court's finding that WRT, a Wisconsin company and the sole named insured under the Policy, is likely not subject to personal jurisdiction in Illinois. Plaintiff points out that State Farm, which bore the burden of proof at all times in the prosecution of its motion to dismiss, adduced no facts or law below to support this jurisdictional claim. State Farm indeed neither cited authority nor carried its factual burden. The record indicates that Easy PC and WRT share a common business address and that Wessel is a principal of both companies. Beyond that, the record discloses nothing about WRT and its relationship to Easy PC.

¶ 63    We turn to the public-interest factors, the first of which is "the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin" (*id.* ¶ 16). In its motion, State Farm made no assertions about forum congestion. The trial court found that Lake County courts "cannot be said to be congested." Therefore, this factor is neutral here and does not weigh against plaintiff's forum choice.

¶ 64    The next public-interest factor concerns "the unfairness of imposing jury duty upon residents of a community with no connection to the litigation" (*id.*). The trial court noted that no jury demand had been filed in the case, but went on to find that "Wisconsin has a greater interest in resolving this case than does Illinois since *** this is a Wisconsin-based dispute." Since State Farm had until the filing of its answer to request a jury (see 735 ILCS 5/2-1105 (West 2012)), the trial court was correct to inquire into whether the chosen forum, Illinois, had a connection to the litigation. See *Medical Alliances, LLC v. Allstate Insurance Co.*, 352 Ill. App. 3d 239, 245 (2004). We consider the "connection" factor together with the final public-interest factor, which is "the interest in having local controversies decided locally" (*Fennell*, 2012 IL 113812, ¶ 16).

¶ 65    We disagree that this case is "local" to Wisconsin and has "no connection" to Illinois. First, we comment on the parties' occasional characterization of the underlying suit as a "nationwide" class action. The materials in the record describing the class composition name only Wisconsin and Illinois as the states in which class members reside. If these descriptions are true, then plaintiff did not have many potential forums from which to choose. Second, an

appreciable "connection" with Illinois exists in the fact that many, indeed more than half, of the 7,000 class members reside in Illinois, where they received junk faxes from Easy PC. As noted, a court conducting a *forum non conveniens* analysis in an insurance coverage suit may take note of where any class member was injured as alleged in the underlying suit, provided the class was certified. *Supra* ¶¶ 49-52.

¶ 66     Illinois's interest in this case is clear, given the supreme court's emphasis that a state has a decided interest in adjudicating cases alleging injuries occurring within its borders:

> "Illinois has an interest in protecting persons and property within the State from unsafe practices and conditions; the State should therefore provide a forum in which persons, no matter where they reside, can seek compensation for injuries suffered in Illinois. ***
>
> *** There is clearly an overriding element of essential fairness in condoning the choice by an injured party of the forum in which the injury was suffered. It also makes for sensible and effective judicial administration for a claim to be pursued in the forum where it arose. Where the plaintiff files his claim at the situs of his injury there is a clear nexus with the forum, and the plaintiff cannot be charged with forum shopping. [Citation.]
>
> Thus, in those cases where the court has concluded that Illinois did not provide the most convenient forum, the court also pointed out that the cause of action did not arise, and injury was not suffered, in Illinois. [Citations.]" *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 499-501 (1986).

¶ 67     In *Brummett*, the only connection the matter had with Illinois was that the plaintiff was injured here while on a riverboat. The supreme court held that this fact alone was enough to sustain the trial court's denial of the defendant's motion to dismiss for *forum non conveniens*. *Id.* at 499-505. Here, alleged injuries giving rise to this insurance coverage dispute did occur in Illinois, and therefore the litigation has a "clear nexus" to this state.

¶ 68     The trial court relied heavily on its understanding that Wisconsin law would govern the interpretation of the Policy, which was issued in Wisconsin. The parties agree that Wisconsin law would so govern. " 'The need to apply the law of a foreign jurisdiction has been considered a significant factor favoring dismissal of a suit on grounds of *forum non conveniens*.' " *Gridley*, 217 Ill. 2d at 175 (quoting *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80 (1983)). "Illinois courts have an interest in not being burdened with applying foreign law *in the absence of strong policy reasons and a strong connection to the case*." (Emphasis added.) *Id.* The italicized criterion was met here. *Brummett* teaches that, where injuries alleged in the case occurred in Illinois, this state has a strong connection to the action. See *Brummett*, 111 Ill. 2d at 499-500.

¶ 69     Additionally, the fact that State Farm has its principal place of business in Illinois is important not just for the private-interest component of the *forum non conveniens* analysis. It figures as well in the public-interest aspect. In *Wieser*, the plaintiff's husband was killed in an automobile accident in Oklahoma after leaving his employer's place of business in that same state. The plaintiff filed suit in Illinois against the employer, which later moved to dismiss for *forum non conveniens*. The trial court denied the motion. The supreme court reversed, noting that the only connection the suit had to Illinois was that the plaintiff's attorney resided in Illinois and that the employer, a railroad, did business here. The court commented: "If Illinois had any connection with the litigation such as the residence of the

plaintiff, *or the principal place of business of the defendant*, or the situs of the accident, or of the decedent's employment, it would have had an interest in providing a forum in which to resolve the dispute." (Emphasis added.) *Wieser*, 98 Ill. 2d at 371-72. The supreme court has since cautioned that, where the only Illinois connection to a lawsuit is that the defendant's principal place of business is situated here, Illinois lacks an adequate interest in providing a forum for the litigation. See *Gridley*, 217 Ill. 2d at 172-74. Under *Gridley*, however, it is still at least relevant for the public-interest aspect of the *forum non conveniens* analysis that the defendant has its principal place of business here. *Id.* at 173 ("The fact that State Farm's principal place of business is in Illinois *** is just one factor to be considered in determining whether Illinois or [another state] is the more appropriate forum.").

¶ 70  To summarize our analysis, we note that State Farm's motion to dismiss for *forum non conveniens* has been seriously impaired by events arising since the notice of appeal in this case. The alternate forum that State Farm proposed below was the federal district court in Milwaukee, where State Farm's own declaratory judgment action on the Policy was then pending. Since plaintiff took the appeal in this case, however, the district court dismissed the federal action for lack of subject matter jurisdiction. State Farm does not attempt to convince us that plaintiff's case would not likewise be dismissed if it were refiled in the Milwaukee federal court. Moreover, even if we assumed that the Milwaukee court was an available forum for plaintiff, we would find that the trial court abused its discretion in dismissing this Illinois action. Contrary to the trial court's belief, plaintiff's forum choice was presumably convenient, and entitled to full deference, because a significant number, indeed the majority, of the class members who allegedly received faxes resided in Illinois. We hold that no reasonable person could conclude that the private- and public-interest factors strongly weighed against plaintiff's forum choice, where Illinois has a strong connection to this dispute given that some of the alleged injuries occurred in Illinois and that State Farm's principal place of business is in Illinois. This strong connection to Illinois is not negated by the facts that Milwaukee is 55 miles closer than Waukegan to the witnesses and that Wisconsin law would apply to the interpretation of the Policy.

¶ 71  For the foregoing reasons, we hold that the trial court abused its decision in agreeing with State Farm that dismissal of plaintiff's Illinois action was warranted on grounds of *forum non conveniens*. We turn to the other stated basis for the dismissal.

¶ 72                               B. Section 2-619(a)(3) of the Code

¶ 73  As an alternative ground for the dismissal, the trial court cited the action pending in the Milwaukee federal court and relied on section 2-619(a)(3) of the Code, which authorizes a trial court to dismiss an action where "there is another action pending between the same parties for the same cause" (735 ILCS 5/2-619(a)(3) (West 2012)). Plaintiff contends that, because the federal action has since been dismissed, section 2-619(a)(3) is no longer applicable.

¶ 74  State Farm asserts that plaintiff forfeited any argument on section 2-619(a)(3) by failing to address the issue below in responding to State Farm's motion to dismiss. We disagree. First, though plaintiff's response did not cite section 2-619(a)(3) as such, plaintiff did make arguments pertinent to that section. Specifically, plaintiff discounted the significance of the federal case by arguing that the district court had no jurisdiction to hear it and that plaintiff's motion to that effect was pending in the district court. Additionally, at the hearing on State

Farm's motion to dismiss, plaintiff squarely addressed the requirements of section 2-619(a)(3). Finally, following the trial court's dismissal of the Illinois action, plaintiff filed a motion to reconsider, again pointing to the pending motion in federal court. Therefore, we hold that plaintiff properly preserved this contention for appeal.

¶ 75 We have authority to take judicial notice of facts outside the record that moot the issue under consideration. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). Also, as noted, we may take such notice of another court's decision. See *Aurora Loan Services*, 2013 IL App (1st) 121700, ¶ 37. With the dismissal of the federal litigation, there is no longer another action pending between the parties for the same cause. Therefore, section 2-619(a)(3) can no longer support the dismissal of the present action.

¶ 76                                      C. Rule 103(b)

¶ 77 Neither of the grounds stated by the trial court supports the dismissal of plaintiff's action. State Farm proposes, as an alternative ground, Rule 103(b). State Farm relied on the rule below, but the trial court declined to reach the issue, finding the dismissal adequately supported by other bases. We may properly consider whether Rule 103(b) can support the dismissal. See *Bernabei v. County of La Salle*, 258 Ill. App. 3d 799, 801 (1994) (dismissal of a complaint may be affirmed on any basis appearing in the record).

¶ 78 Rule 103(b) states:

> "(b) Dismissal for Lack of Diligence. If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct. The dismissal may be made on the application of any party or on the court's own motion. In considering the exercise of reasonable diligence, the court shall review the totality of the circumstances, including both lack of reasonable diligence in any previous case voluntarily dismissed or dismissed for want of prosecution, and the exercise of reasonable diligence in obtaining service in any case refiled under section 13-217 of the Code of Civil Procedure [(735 ILCS 5/13-217 (West 2012))]." Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 79 Courts use a burden-shifting mechanism to adjudicate motions to dismiss under Rule 103(b):

> "In moving for dismissal under Rule 103(b), the defendant must initially make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence in effectuating service after filing the complaint. [Citation.] Once the defendant establishes that the time between the filing of the complaint and the date of service suggests a lack of diligence, the burden then shifts to the plaintiff to provide a satisfactory explanation for the delay in service. [Citation.] In the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal. [Citation.]" *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 17.

¶ 80    "No absolute time frame exists that will shift the burden and require the plaintiff to offer an explanation for his or her actions." *Kole v. Brubaker*, 325 Ill. App. 3d 944, 949 (2001). "[T]he determination of whether the defendant has established a *prima facie* case of lack of diligence must be made on a case-by-case basis." *Id.* The court in *Kole* suggested that, in determining whether a *prima facie* case was made, the court should consider "any patently unusual circumstances" that would have "prevented or otherwise hindered [the] plaintiff's ability to serve [the] defendants." *Id.*

¶ 81    State Farm's Rule 103(b) motion asserted a lack of reasonable diligence based on the fact that plaintiff's complaint was filed on April 20, 2012, but the alias summons was not served on State Farm until August 16, 2012–a span of 3 months and 27 days, or roughly 16 weeks. State Farm suggested that plaintiff had the intent of keeping State Farm ignorant of the ongoing class action proceedings in Wisconsin state court until it was too late for State Farm to intervene. Thus, according to State Farm, plaintiff purposefully delayed service in this action until after the trial court entered judgment on the Agreement in the Wisconsin state action.

¶ 82    We hold that the burden did indeed shift here. State Farm has its principal place of business in Illinois and was readily locatable for service. The record discloses no unusual circumstances that could have delayed service. Consequently, a delay of nearly four months was facially unreasonable.

¶ 83    Plaintiff, however, offered no justification in the trial court for the delay, but instead engaged in a purely numerical comparison of the delay in this case with the delays in published cases addressing Rule 103(b). Plaintiff did not undertake to explain, within the factual context of this case, why it did not serve State Farm earlier.

¶ 84    We hold, therefore, that Rule 103(b) is an adequate alternative ground for the dismissal, which was unsupportable under the rationales stated by the trial court. Since, as the parties agree, the statute of limitations had not passed when State Farm was served, the dismissal shall be without prejudice as to the action against State Farm. See Ill. S. Ct. R. 103(b) (eff. July 1, 2007) ("If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the statute of limitations, the action as to that defendant may be dismissed without prejudice.").

¶ 85                              III. CONCLUSION

¶ 86    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County dismissing plaintiff's complaint against State Farm. We amend the judgment to reflect that the dismissal is without prejudice to plaintiff refiling the action against State Farm.

¶ 87    Affirmed as modified.